# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

## SAVANNAH DIVISION

GEORGE A. DEMPSEY,               )
                                 )
      Plaintiff,              )
                                 )
v.                               )
                                 )
ANN ELMORE, *Assistant District* )
*Attorney*; JAVIER PORTALES,     )     Case No. CV407-141
BEN SELPH, TIMOTHY               )
R. MCMILLAN, STEVE STRATMAN,     )
*Garden City Police Officers*; CHRIS )
NOLLINGER, *Port Wentworth Police* )
*Officer*; AL ST. LAWRENCE,      )
*Chatham County Sheriff*; and    )
CHATHAM COUNTY, GEORGIA,         )
                                 )
      Defendants.             )

## <u>ORDER</u>

In this 42 U.S.C. §1983 case, plaintiff George A. Dempsey alleges that: (a) various law enforcement officers arrested him without probable cause and gave knowingly false affidavits in connection with later warrants issued for his arrest; (b) police officer Chris Nollinger subjected him to cruel and unusual punishment by placing him, on a late Spring evening, in a police cruiser with the vehicle's heater running and its windows rolled up; (c) various government officials and entities denied him a timely judicial

determination of probable cause following his warrantless arrest; and (d) the prosecutor in his case, Ann Elmore, gave false testimony at his bail hearing.[1] Doc. 1 at 4-6; doc. 13 at 5; *see also* doc. 10 at 2-3, *Dempsey v. Elmore*, 2008 WL 4533924 at * 1-2 (S.D. Ga. June 4, 2008) (recommending, *inter alia*, that prosecutor Ann Elmore be dismissed as immune from suit); doc. 12, 2008 WL 2324074 at * 1 (S.D. Ga June 5, 2008) (denying amendment to add "overheating" claim as "unrelated to the probable cause determination claim alleged in his original complaint"); *partially rejected,* doc. 23, 2008 WL 4491475 (S.D. Ga. Oct 3, 2008) (authorizing "overheating" claim and holding Elmore in this case); doc. 117 (denying reconsideration motion attempt to add a defendant).[2]

---

[1] Dempsey brought the suit for himself "and others similarly situated." Doc. 1 at 6. Local Rule 23.1 governs the captioning and content of class action pleadings. Dempsey has never complied with it, so the Court **DISMISSES WITH PREJUDICE** his "similarly situated" allegations.

[2] According to the Georgia Department of Corrections, Dempsey's real name is Anthony Michael Jackson. *See* Georgia Department of Corrections Offender Query, *available at* http://www.dcor.state.ga.us/GDC/OffenderQuery/jsp/OffQryForm.jsp (last visited March 12, 2010). He has also used the following names: "George Anthony Demps," "George Anthony Dempsey," "Antonio Jackson," "Anthony Michael Patterson," and "George Patterson." *Id.* And he has admitted as much here, stating that his name is "George A. Dempsey," but he is also known as "Anthony M. Jackson." Doc. 18 ("I have been registered into this institution under an 'AKA' Anthony M. Jackson for reasons I don't know."). Plaintiff also has used different names in different federal court filings. *See, e.g., Jackson v. Chatman*, No. CV509-203 (M.D. Ga. June 23, 2009) (§ 1983 action filed as "Anthony Michael Jackson"); *Dempsey v. Smith*, No.

2

On June 2, 2008, months after this case was filed, Dempsey entered an *Alford* plea[3] to charges that arose from the events complained of here. Doc. 134-3 at 6; doc. 134-11 at 2. Defendants now move, over Dempsey's opposition, for summary judgment. Docs. 134, 136, 140. Dempsey himself also moves for summary judgment, doc. 148, for sanctions, doc. 155, to amend, doc. 168, and for a default judgment against Nollinger. Doc. 176. He also moves "in opposition to defendants Garden City police," doc. 172, which is simply a response brief styled as a motion and thus is **DENIED**

---

CV903-2890 (D.S.C. Sept. 28, 2004) (28 U.S.C. § 2241 habeas case filed as "George Anthony Dempsey"). Because of his many aliases, it is difficult to determine whether Dempsey qualified as a 28 U.S.C. § 1915(g) "three striker" prior to filing suit. Section 1915(g) bars prisoners, absent a showing that they are in danger of imminent physical injury, from proceeding without prepayment of the Court's full $350 filing fee if, prior to filing a complaint, they have had three meritless suits or appeals dismissed as frivolous, malicious, or for failure to state a claim for relief. Although it is now clear that Dempsey (Jackson) is a three-striker, the Court is unable to say with certainty that he achieved that status prior to filing this action, and thus he will not be required to pay the filing fee as a condition to proceeding.

[3] *See North Carolina v. Alford*, 400 U.S. 25, 37 (1970) ("[a]n individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime."). Courts, then, may constitutionally accept a guilty "plea containing a protestation of innocence when ... [the] defendant intelligently concludes that his interests require entry of a guilty plea and the record before the judge contains strong evidence of actual guilt." *Id.*; *Baltimore v. City of Albany, Ga.*, 183 F. App'x 891, 894 (11th Cir. 2006).

outright.[4]

## I.  SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure requires a court to enter summary judgment where the record, taken as a whole, establishes "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "An issue of fact is 'material' if it might affect the outcome of the case under the governing law. . . . It is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the non-moving party." *Baker v. Sears, Roebuck & Co.*, 903 F.2d 1515, 1518 (11th Cir. 1990) (citations omitted).

The moving party "always bears the initial responsibility of informing the [trial] court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once

---

[4] This comports with Dempsey's penchant for bulking up the record with needless motions and filings. *See* doc. 123 at 7 ("As Dempsey's 'Motion in Response to defendant's (police Officer) Answer" (sic) makes clear (doc. 89), he has established a practice of filing a 'motion' in response to pretty much each and every item that the defendants send to him by way of a discovery response. This patently burdens the Court (doc. 89, by the way, is **DENIED)** and the Court will recommend a with-prejudice dismissal of plaintiff's case if he persists in filing such motions after receiving this Order."). Thus, this latest "motion," too, is **DENIED** outright.

the movant has shown that the party bearing the burden of proof at trial lacks evidence on an essential element of his claim, the burden of production shifts to the nonmoving party "to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting Rule 56(e)).

"Although reasonable inferences to be drawn from the facts must be viewed in the light most favorable to the non-moving party, that party 'must present affirmative evidence in order to defeat a properly supported motion for summary judgment' to show that there is a genuine issue for trial." *Tidmore v. BP Oil Co./Gulf Prods. Div.*, 932 F.2d 1384, 1387 (11th Cir. 1991) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)). A mere scintilla of evidence supporting the non-moving party's position will not fulfill its burden. *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990). The Court must consider the entire record in the case, not just those portions of the record which have been singled out for attention by the parties. *Baker*, 903 F.2d at 1519.

## II.  ANALYSIS

### A.  False Arrest and Malicious Prosecution

Dempsey claims that he was "falsely arrested" by the defendant police officers, who apprehended him without a warrant on May 18, 2006, after stopping the vehicle in which he was riding as a passenger.  Doc. 13 at 3-4. He claims that these officers provided false affidavits to wrongfully institute legal process against him.  *Id.*

The constitutional tort of false arrest, a "species" of false imprisonment, arises from "detention without legal process."  *Wallace v. Kato*, 549 U.S. 384, 389 (2007).  False arrest claims, therefore, provide recovery for damages between the time of arrest or seizure and the issuance of legal process.  *Id.* at 390 ("false imprisonment ends once the victim becomes held *pursuant to* [legal] *process*"); *Heck v. Humphrey*, 512 U.S. 477, 484 (1994) (false arrest claims "'cover the time of detention up until the issuance of process or arraignment, but not more'"); *Whiting v. Traylor*, 85 F.3d 581, 585 n.8 (11th Cir. 1986) (same).  Because Dempsey's initial arrest was made without a warrant, he can properly assert a false arrest (or imprisonment) claim from the time of his arrest until the point that formal

6

legal process commenced, in this case through the issuance of arrest warrants on July 12, 2006. Doc. 13 at 9-18. Once legal process issued, Dempsey's claim raises "the entirely distinct" tort of malicious prosecution. *Wallace*, 549 U.S. at 390; *Taylor v. Waranzak*, No. CV497-272, doc. 81 (Report and Recommendation) at 26 (S.D. Ga. Jan. 19, 1999) ("'An arrest warrant constitutes legal process and it is the tort of malicious prosecution that permits damages for confinement pursuant to legal process.'") (quoting *Calero-Colon v. Betancourt-Lebron*, 68 F.3d 1, 3-4 (1st Cir. 1995)).

The Fourth Amendment prohibits "unreasonable . . . seizures," and thus a law enforcement officer who abuses his state authority by conducting a warrantless arrest without probable cause is subject to civil liability under 42 U.S.C. § 1983 for false arrest. *See, e.g., Ortega v. Christian*, 85 F.3d 1521, 1525 (11th Cir. 1996) ("A warrantless arrest without probable cause violates the Fourth Amendment and forms a basis of a section 1983 claim."); *Max v. Gumbinner*, 905 F.2d 1503, 1505 (11th Cir. 1990). The existence of probable cause at the time of the arrest, however, is an absolute bar to a § 1983 action for false arrest. *Case v. Eslinger*, 555 F.3d 1317, 1327 (11th Cir. 2009).

Dempsey specifically asserts that he was subjected to a "false arrest," doc. 1 at 5, doc. 13-2 at 2-4, and the Court has interpreted his complaint liberally as urging a claim that the defendant police officers lacked probable cause to arrest him. In their motion for summary judgment, the officers[5] specifically assert that they did possess probable cause to arrest Dempsey, and they have supported their motion with affidavits and the "Statement of Material Facts" required by Local Rule 56.1.[6] Doc. 136-1 at 11-13 (brief

---

[5] Although Nollinger initially took custody of Dempsey, Portales was reported as the arresting officer. Doc. 136-1 at 28 (Portales Aff.); doc. 156 at 14-15 (Dempsey Aff.). Dempsey does not dispute that Officers Toole and Selph were not present at the time of the arrest, and McMillan and Stratman were detectives who had little to do with the case until later. Doc. 136-1 at 36 (Selph Aff.); *id.* at 43 (Toole Aff.); *id.* at 51 (McMillan Aff.); *id.* at 53 (Stratman Aff.). Hence, it appears that Nollinger and Portales are the only proper defendants on the false arrest claim. Nevertheless, the Court will continue to refer to the group as "defendant officers."

[6] Plaintiff failed to controvert defendants' statement of material facts by filing his own statement of material facts supported by evidence in the record. L.R. 56.1. Where a litigant fails to do so, the Court should "disregard or ignore evidence [he] relie[s] on -- but not cited in its response to the movant's statement of undisputed facts -- that yields facts contrary to those listed in the movant's statement." *Reese v. Herbert*, 527 F.3d 1253, 1268 (11th Cir. 2008); *see also Cockrell v. Sparks*, 510 F.3d 1307, 1310 n.2 (11th Cir. 2007) (applying similar local rule in § 1983 action). Pro se litigants are subject to the rules of the Court, *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989), and they are thus "not excused from the obligation to respond to a statement of material facts in the manner required by the rule." *Gillilan v. Broome*, 2010 WL 736894 at *3 n.4 (S.D. Ga. March 1, 2010) (citing *MackMuhammad v. Cagle's Inc.*, No. CV408-11, 2010 WL 55912, at *1 (M.D. Ga. Jan. 4, 2010); *United States v. Delbridge*, No. CV106-110, 2008 WL 1869867, at *9 (M.D. Ga. Feb. 22, 2008); *King v. Publix Supermarkets, Inc.*, No. CV105-486, 2006 WL 2166729, at *8 (N.D. Ga. July 28, 2006)); *see also Holtz v. Rokefeller & Co.*, 258 F.3d 62, 73 (2nd Cir. 2001) (cited by *Reese* and applying Rule to pro se plaintiff); *Cannady v. Automatic Data Processing, Inc.*, 2006 WL 3422424 at *1 (N.D. Ga. Nov. 28, 2006); *Glenn v. Copeland*, 2006 WL 1662921 at *3 (N.D. Fla. June 9, 2006).

arguing that probable cause existed supporting the arrest); *id.* at 26-30

(Portales Aff.); *id.* at 35-37 (Selph Aff.); *id.* at 42-44 (Toole Aff.); *id.* at 50-

51 (McMillan Aff.); *id.* at 53-54 (Stratman Aff., explaining that he was not

present for the arrest but investigated the incident thereafter); doc. 136-2

(Statement of Material Facts).

The defendant police officers show that they responded to an alarm

and apparent commercial burglary in Garden City, Georgia and observed

a tall, thin black male running from the scene and toward a mobile home

park. Doc. 136-2 at 1. Police then entered the park, heard screeching tires,

and observed a van speeding away (running a stop sign and traffic light as

it did so). The ensuing chase crossed municipal jurisdictions and ended

when the van struck a tree in Savannah, Georgia. During the chase, the

van rammed a police vehicle, and the van's passenger threw objects from it

toward the chasing police. After the crash, the van's driver fled but

Dempsey, the passenger, surrendered to the police. Officer Chris Nollinger

placed him in his vehicle, but Dempsey proceeded to kick out the patrol

car's window. *Id.* at 1-2; doc. 136-1 at 35-36, 42-43. Police arrested

---

Nevertheless, the Court will consider Dempsey's affidavits in crafting this Order.

Dempsey for "burglary, aggravated assault, interference with Government property, obstruction by fleeing, and providing false statements." Doc. 136-1 at 47.

The inquiry here is guided by the defendant officers' assertion of qualified immunity as a defense. Doc. 136-1 at 9-11. The doctrine of qualified immunity protects government officials from civil damages liability if their conduct did not violate clearly established law that a reasonable person would have known. *Pearson v. Callahan*, ___ U.S. ___, 129 S. Ct. 808, 815 (2009). "In wrongful arrest cases, [the Eleventh Circuit has] defined the 'clearly-established' prong as an 'arguable probable cause' inquiry." *Moran v. Cameron*, 2010 WL 200834 at * 6 (11th Cir. Jan. 21, 2010); *Scarbrough v. Myles*, 245 F.3d 1299, 1303 (11th Cir. 2001) ("Because [defendant] had arguable probable cause to arrest [plaintiff], he violated no clearly established law...."). "In determining whether arguable probable cause exists we ask whether 'reasonable officers in the same circumstances and possessing the same knowledge as the Defendant could have believed that probable cause existed to arrest.'" *Moran*, 2010 WL 200834 at *6 (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir. 2002)). "There is

no arguable probable cause if 'no reasonable officer could have found probable cause under the totality of the circumstances.'" *Id.* (quoting *Kingsland v. City of Miami*, 382 F.3d 1220, 1232 (11th Cir. 2004)).

Dempsey admits that he was the passenger in a van that hurriedly fled from police near the scene of a commercial burglary and then led the police on a "high speed chase at 100 mph." Doc. 156 at 13-16 (Dempsey Aff., offered in rebuttal to defendant officers' motion for summary judgment); *see also* doc. 144 at 13-14 (Dempsey Aff. rebutting defendant Elmore's motion for summary judgment); doc. 147 at 6-7 (Dempsey Aff. rebutting County and Sheriff's motion for summary judgment); doc. 156 at 4-7 (response brief questioning what the police claim they saw but never denying that he was the van's passenger when he was arrested); doc. 177 (same). In his responsive affidavit, doc. 156 at 13-16, Dempsey asserts that he was innocently sitting in the van awaiting a ride when the van's driver returned and then drove away from the mobile home park, ignoring police sirens to pull over. Dempsey claims that he "pleaded with the driver" to stop and let him out. *Id.* at 15. Following his arrest, he told a police detective that he "knew nothing about anything being thrown from the

van" during the chase. *Id.*

Accepting the factual assertions of Dempsey's affidavit as true, the Court nevertheless finds that the officers have shown that they possessed arguable probable cause to arrest Dempsey. It is undisputed that the officers were confronted with a late-night commercial burglary and the sighting of a "tall, thin black male" running from the scene into a mobile home park. The officers soon observed a van speeding away from the trailer park, ignoring traffic control devices. When other officers gave chase, the van ignored the sirens and drove up to 100 mph in an effort to elude the police. When the van eventually crashed into a tree, the driver fled on foot and Dempsey surrendered by raising his hands. Even if nothing was thrown from the van at the pursuing police vehicles, the officers clearly had *arguable* probable cause to believe that Dempsey was involved in the commercial burglary and that he engaged in obstruction by willfully fleeing from the pursuing officers. And after Dempsey kicked out the window of the police car, they had probable cause to charge him with damaging state property. The fact that Dempsey claims to have begged the van's driver to stop is not something the officers could have known during their chase, nor

something they were required to credit under these circumstances. In short, a reasonable officer facing similar facts could reasonably have believed that he had sufficient grounds to arrest, and that is all that is needed for "arguable" probable cause. *Lee*, 284 F.3d at 1195; *Kingsland*, 382 F.3d at 1232; *see United States v. Danielson*, 728 F.2d 1143, 1147 (9th Cir. 1984) (officers had probable cause to arrest white male driver and passenger of vehicle when a robbery had been committed by two white males 3 miles away and 30 minutes earlier, the vehicle fit the description of the automobile police suspected being involved in the robbery, it was traveling away from the scene, and the passenger attempted to conceal himself). Since the officers had arguable probable cause to arrest him, they are protected by qualified immunity. Hence, Dempsey's false arrest claim fails.

Dempsey also claims that, in addition to subjecting him to a warrantless arrest without probable cause, Officer Portales later lied in affidavits presented in support of the arrest warrants issued on July 12, 2006. Doc. 156 at 3-4. In alleging that Portales participated in the wrongful institution of formal legal process against him, plaintiff is

asserting "the entirely distinct" tort of malicious prosecution. But an element of the tort of malicious prosecution is the termination of the criminal proceedings in the plaintiff's favor. *Wallace*, 549 U.S. at 392 (quoting *Heck v. Humphrey*, 512 U.S. 477, 484 (1994)). Here, Dempsey pled guilty on June 26, 2008 to commercial burglary, obstruction, aggravated assault on a law enforcement officer, and interference with government property. Doc. 134-11 at 2. Since that conviction has not been reversed on direct appeal, set aside on habeas review, or otherwise expunged or declared invalid, plaintiff's malicious prosecution claim has yet to accrue and therefore "is not cognizable under § 1983." *Heck*, 512 U.S. at 486-87; *id.* at 486 ("civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments"); *see, e.g., Rogers v. Adams,* 103 F. App'x 63, 64 (8th Cir. 2004) (applying *Heck*); *Salas v. Pierce*, 297 F. App'x 874, 876 (11th Cir. 2008) (same).

Since Dempsey's false arrest and malicious prosecution claims are plainly meritless, it is not necessary to reach the defendants' other defenses.

## B.    Overheating Claim

Dempsey alleges that at the time of his 1:30 a.m. arrest, Officer Chris

14

Nollinger placed him in the backseat of a police vehicle that was so suffocatingly hot that he had to break a window to get some relief. Doc. 1 at 5; *see* doc. 136-3 at 1-2; doc. 136-2 at 35-36, 42-43. This claim is dismissed under Fed. R. Civ. P. 4(m).

As this Court recounted in its December 23, 2008 Order, the U.S. Marshal attempted to serve Nollinger personally at the address plaintiff provided, but to no avail. Doc. 74 at 9. Service failed because by the time it was attempted, Nollinger was no longer employed by the Port Wentworth Police Department. Nor did the Marshal's further efforts to locate Nollinger pan out. *Id.* By virtue of his in forma pauperis status, plaintiff is "entitled to rely on the court officers and the United States Marshals to effect proper service, and should not be penalized for failure to effect service. . . ." *Id.* (quotes and cite omitted). But the Marshal is not a clairvoyant, and when his efforts to serve a defendant at the address provided (by plaintiff) prove unsuccessful, the plaintiff is obligated to utilize appropriate discovery devices in an effort to locate the defendant's current address. *See Fowler v. Jones*, 899 F.2d 1088, 1095 (11th Cir. 1990) (although an IFP litigant may rely on the Marshal to serve his complaint,

15

he "'may not remain silent and do nothing to effectuate such service'" and must attempt to remedy any defects in service of which he is aware). The Court specifically notified plaintiff of the Marshal's failure to serve Nollinger and of his obligation to seek Nollinger's address through discovery. *Id.* at 10. And in its March 5, 2009 Order, the Court noted Dempsey's failure to comply with that directive, so it gave him 60 more days to notify the Marshal of an address where Nollinger might be served. Doc. 123 at 5-6 n. 2. He has never done so.

Dempsey has not cited any good cause to justify an additional Rule 4(m) extension here. *See, e.g.*, *Rance v. Rocksolid Granit USA, Inc.*, 583 F.3d 1284, 1286 (11th Cir. 2009) ("good cause" exists for grant of extension of time to effect service of process when some outside factor, such as reliance on faulty advice, rather than inadvertence or negligence, prevents service); *Corning v. Lodgenet Interactive Inc.*, 2009 WL 3294837 at * 3 (M.D. Fla. Oct.13, 2009). In his motion for default judgment against Nollinger, he insists he "located" Nollinger but that Nollinger is evading service. Doc. 176. Dempsey's motion for a default judgment is **DENIED**: the "evasion" assertion is unsupported by anything but plaintiff's own

supposition,[7] and there is no legal remedy against someone who simply fails to surface on a process server's radar screen. Nor does Dempsey's "Notice" to the Court, doc. 182, suffice. In that notice, he insists that Nollinger's former police employer and defense counsel simply "must" know of his whereabouts. But while that inference is a starting point for discovery, it is *Dempsey's* obligation -- not the Court's or the Marshal's -- to conduct discovery.

Dempsey has had over a year to comply with Rule 4(m)'s service requirement, and he has not shown that he has made diligent efforts to locate Nollinger using the standard methods available to all plaintiffs. *Fowler*, 899 F.2d at 1095 (an IFP plaintiff may be penalized for his "'inaction and dilatoriness'" in providing the Marshal with the defendant's correct address). Accordingly, Dempsey's "overheated" claim against defendant Chris Nollinger is dismissed without prejudice under Rule 4(m).

---

[7] Courts have acknowledged that "[a] discretionary extension may be warranted, 'for example, if the applicable statute of limitations would bar the refiled action, or if the defendant is evading service or conceals a defect in attempted service.' Fed. R. Civ. P. 4(m) advisory committee's note (1993)." *Millan v. USAA General Indem. Co.,* 546 F.3d 321, 325 (5th Cir. 2008); *accord Melton v. Wiley*, 262 F. App'x 921, 923 (11th Cir. 2008). Dempsey, however, supplies no evidentiary support for his "evasion" assertion.

## C. Probable Cause Determination

Dempsey claims that he was denied a timely determination of probable cause following his warrantless arrest. Doc. 1 at 5. He blames Chatham County, Georgia and Sheriff Al St. Lawrence for this delay, asserting that they have a "policy and practice" of not providing "a fair and reliable determination of probable cause as a condition for any significant pretrial restraint o[f] liberty for persons arrested without a warrant." *Id.* He also suggests that the defendant police officers failed to promptly bring him before a magistrate. Doc. 13 at 2.

It is well established that individuals subjected to a warrantless arrest are entitled by the Fourth Amendment to a prompt judicial determination of probable cause as a prerequisite to any extended restraint of their liberty following arrest. *Gerstein v. Pugh*, 420 U.S. 103, 114, 125 (1975); *County of Riverside v. McLaughlin*, 500 U.S. 44, 53 (1991) (under *Gerstein*, "persons arrested without a warrant must promptly be brought before a neutral magistrate for a judicial determination of probable cause").[8] It is

---

[8] *McLaughlin* held that "a jurisdiction that provides judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement of *Gerstein*." 500 U.S. at 56. Where a probable cause determination does not occur within 48 hours of a warrantless arrest, "the burden shifts

equally settled that a violation of this Fourth Amendment right affords an arrestee with a cause of action under § 1983. *See, e.g., McLaughlin*, 500 U.S. at 47 (§ 1983 class action challenging manner in which county provided probable cause determinations following warrantless arrests); *Gerstein*, 420 U.S. at 107, n. 5 (same); *Lopez v. City of Chicago*, 464 F.3d 711, 722 (7th Cir. 2006); *Cherrington v. Skeeter*, 344 F.3d 631 (6th Cir. 2003); *Tilson v. Forrest City Police Dep't*, 28 F.3d 802, 812 (8th Cir. 1994); *Hallstrom v. City of Garden City*, 991 F.2d 1473, 1480-83 (9th Cir. 1993).

In the typical claim, a plaintiff subjected to a warrantless arrest alleges that he was kept in custody for days, weeks, or months without a judicial determination of probable cause. *McLaughlin*, 500 U.S. at 1664 (plaintiffs detained for days without a judicial probable cause determination pursuant to county policy combining probable cause determinations with arraignment procedures); *Gerstein*, 420 U.S. at 106 (plaintiffs detained for a substantial period of time solely on the decision of a prosecutor). Here, Dempsey admits that he appeared before a magistrate just over 12 hours after his arrest. Doc. 1 at 5 (noting that he was arrested at 1:30 a.m. and

---

to the government to demonstrate the existence of a bona fide emergency or other extraordinary circumstance." *Id.* at 57.

that he saw a magistrate at the jail at 1:36 p.m. that same day). Dempsey,

however, contends that the magistrate's probable cause determination was

so deficient as to constitute no determination at all.[9] *Id.* ("evidence of

probable cause was not presented").[10] Assuming that to be true, the

question then is, who is responsible? The magistrate was previously

---

[9] The defendant officers assert that the judge *did* make a proper probable cause determination at that May 18, 2006 hearing: "Judge Edenfield reviewed the facts and evidence" and "determined that there was probable cause to detain Plaintiff. . . ." Doc. 136 at 4. Indeed, the judge, in his affidavit, conclusorily says that he did so. Doc. 136-1 at 59-60. There is a glaring problem with the assertion, however. The police incident reports that the judge apparently relied upon were not sworn or signed under penalty of perjury. Indeed, nowhere in the record have the defendants shown that the probable cause determination was made upon any evidence made under oath or affirmation, which is required under the Fourth Amendment for probable cause determinations. *See, e.g., United States v. Bueno-Vargas,* 383 F.3d 1104, 1110-1111 (9th Cir. 2004) (at the very least, a police officer's statement should be signed under penalty of perjury); *El v. Crain,* 560 F. Supp. 2d 932, 947 (C.D. Cal. 2008) (judicial determination of probable cause following warrantless arrest may be made outside of arrestee's presence, by means of application made on pre-printed form filled out with arresting officer's *sworn* statement about facts allegedly supporting probable cause); *United States v. Stribling,* 2008 WL 177838 at * 5 (E.D. Wis. Jan. 18, 2008). But, as will be seen, even if the probable cause proceeding was flawed, Dempsey's claim does not survive summary judgment.

[10] To the extent Dempsey suggests that a hearing is *required,* he is mistaken. The adversary safeguards found at trial "are not essential for the probable cause determination required by the Fourth Amendment. The sole issue is whether there is probable cause for detaining the arrested person pending further proceedings. This issue can be determined reliably without an adversary hearing. The standard is the same as that for arrest." *Gerstein v. Pugh,* 420 U.S. 103, 120 (1975). "That standard -- probable cause to believe the suspect has committed a crime -- traditionally has been decided by a magistrate in a nonadversary proceeding on hearsay and written testimony, and the Court has approved these informal modes of proof." *Id.* Nevertheless, the Fourth Amendment states that probable cause must be "supported by oath or affirmation."

dismissed on grounds of absolute judicial immunity. Doc. 23 at 5-8. Chatham County now asserts in its motion for summary judgment that Garden City, an independent municipality, bears responsibility for complying with *Gerstein* and *McLaughlin*. Doc. 139 at 2-5.

Dempsey was arrested by Garden City police officers and "booked" at the Garden City Police Department. *See* doc. 136-1 at 4 (citing Portales Aff. and Clifton Aff.). Garden City Police Captain Frank Clifton then arranged for Dempsey to be seen by Garden City Municipal Court Judge Tom Edenfield the next day. *Id.* Chatham County and the Sheriff argue that Garden City, an incorporated municipality, bore all responsibility for providing Dempsey with a *Gerstein/McLaughlin* probable cause determination following his warrantless arrest. Doc. 139 at 5. They have offered several affidavits on that score. According to County Manager Russell E. Abolt, the jail staff provides the Chatham County Recorder's Court with daily lists of those warrantless arrests made within Savannah city limits or the *unincorporated* portions of Chatham County. Doc. 142 at 2 (Abolt Aff.). The Recorder's Court schedules timely probable cause hearings for detainees kept at the jail. *Id.* The Recorder's Court Director,

Prince Johnson, affirms that practice and again emphasizes that the practice applies only to those suspects held without a warrant that were arrested in the corporate limits of the City of Savannah and within the unincorporated limits of Chatham County. Doc. 142 at 3-4 (Johnson Aff.). For those arrested without a warrant in *incorporated* municipalities within Chatham County, however, "the arresting agency/officer is responsible for ensuring that the applicable probable cause hearing or inquiry is conducted by the applicable judicial officer or magistrate." *Id.*

Dempsey has not offered any contrary evidence on the issue but instead stubbornly insists that since he was held in the *County's* jail, it was therefore the County's responsibility to ensure that his right to a prompt probable cause determination was protected. Doc. 147 at 1, 3; *see* docs. 154 & 163. But that is simply not the case. The arresting officers, and hence the municipality (or other jurisdiction) making the arrest, are responsible for conveying the offender before a judicial officer. O.C.G.A. § 17-4-62. Too, the place of detention cannot be determinative. Municipalities (and the federal government, for that matter) contract with county jails to detain suspects, but they maintain control and responsibility over the detainee's

legal proceedings. *Cf. Cherokee County v. Greater Atlanta Homebuilders Ass'n*, 225 Ga. App. 764, 770 (2002) ("cities pay jail fees when they use the county jail to incarcerate municipal offenders"). Neither the County nor the Sheriff had an independent duty to guarantee that the arresting officers (or the municipality that employed them) provided Dempsey with a proper probable cause determination -- though they did have a duty not to impede the officers or municipality from doing so.[11] Here, since neither the County nor Sheriff caused the violation nor impeded the proceeding, they have no liability for the municipal judge's mistakes.[12]

As to the officers, only Portales could bear any responsibility for failing to produce Dempsey to a magistrate for a probable cause determination, since he was the arresting officer. Officers Toole and Selph

---

[11] In an affidavit accompanying his response to Elmore's motion for summary judgment, Dempsey suggests that Garden City "gave him up" to Chatham County upon arrest in order to avoid the cost of detention. Doc. 144 at 13-14. His conclusory assertion is plainly mistaken. Garden City retained the case until it was bound over to the Chatham County Superior Court. It is unclear exactly when the Superior Court took over the case, but the Garden City Municipal Judge issued warrants for Dempsey's arrest in July 2006. Dempsey was then indicted in the Chatham County Superior Court on August 2, 2006. Doc. 134-8.

[12] Dempsey never alleges that Garden City set forth a policy of denying defendants an adequate probable cause determination. Had he done so, though, his claim would still be deficient, since he has not presented any evidence of such a policy (either at Garden City or Chatham County), other than the seemingly isolated incident of which he complains.

were not present at the time of the arrest, and McMillan and Stratman were detectives who had little to do with the case until later. *See supra* note 5; doc. 136-3 at 3-4. But any claim against Portales necessarily fails, since Dempsey *was* promptly presented to a magistrate. That is, even if the judge failed to properly determine probable cause justifying continued detention, his failure does not carry over to Portales, who fulfilled his duty when he delivered Dempsey to the Garden City Police Department following his arrest. Once he relinquished custody of plaintiff to the proper authorities, Portales had no control over when the magistrate saw plaintiff or the manner in which the probable cause proceeding was conducted. *Lambert v. McFarland*, 612 F. Supp. 1252, 1262 (N.D. Ga. 1984).

Since Portales, the County, and the Sheriff did nothing wrong here, Dempsey's *Gerstein/McLaughlin* claim against them fails.

### D.  Ann Elmore

Finally, Dempsey challenges prosecutor Ann Elmore's July 13, 2006 "bond hearing" presentation, faulting her for accusing him of ramming the police vehicle when he was merely the passenger in the van that fled from

the police.  Doc. 13 at 5; doc. 144 at 2, 13-14.[13]  Elmore enjoys absolute

immunity from damages, as she was clearly performing her function as an

advocate for the state in urging that Dempsey's bond request be denied.

*Imbler v. Pachtman*, 424 U.S. 409, 427 (1976); *see Rivera v. Leal*, 359 F.3d

1350, 1353 (11th Cir. 2004) ("A prosecutor is entitled to absolute immunity

for all actions he takes while performing his function as an advocate for the

government.") (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993));

*Mastroianni v. Bowers*, 173 F.3d 1363, 1366 (11th Cir. 1999); *Jones v.

Cannon*, 174 F.3d 1271, 1281 (11th Cir. 1999).

Initially, the Court charitably construed Dempsey's complaint as

alleging that Elmore acted as a complaining witness, doc. 23 at 4, and she

thus did not enjoy prosecutorial immunity.[14]  *See Kalina v. Fletcher*, 522

---

[13] More bond "and other hearings" were held over the next two years, and this drawn-out process simply wore him down "to the very point of madness," so that he felt forced to enter an *Alford* plea on June 2, 2008 "in hopes [sic] to escape the bitter bondage of the County Jail. . . ." Doc. 144 at 14. Dempsey is advancing a new claim based on an alleged involuntary guilty plea. It is dead on arrival, for "civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments." *Heck*, 512 U.S. at 486. To recover damages on a claim that impugns the validity of his conviction, a § 1983 plaintiff must first have that conviction overturned on appeal or through an appropriate habeas or other collateral proceeding. *Id.* at 486-87.

[14] In determining whether an act is protected by absolute prosecutorial immunity, the Supreme Court has created a "functional" approach, examining the nature of the function performed, not the actor who performed it. *Buckley*, 509 U.S. 259, 269 (1993); *Burns v. Reed*, 500 U.S. 478, 486 (1991). "Absolute immunity protects the prosecutor's

25

U.S. 118, 129-131 (1997) (denying prosecutorial immunity where the prosecutor acted as a witness by certifying probable cause documents). The summary judgment evidence makes clear, however, that she was acting as an advocate for the state during a bond proceeding, *not* as a complaining witness attesting to probable cause for plaintiff's arrest. Doc. 134-3 (Elmore Aff.). Dempsey has not rebutted Elmore's assertion that she simply requested that bond be denied based upon her understanding of the facts of the case. Elmore did not certify the facts giving rise to probable cause; the probable cause determination had been made the day before, based upon officer affidavits.[15] Doc. 13 at 9-18. Hence, this case is not like

---

role as advocate for the State, and not his or her role as an administrator or investigative officer." *Guzman-Rivera v. Rivera-Cruz*, 55 F.3d 26, 29 (1st Cir. 1995) (citations omitted). The immunity enjoyed by the prosecutor "attaches to his function, not to the manner in which he performed it." *Barrett v. United States*, 798 F.2d 565, 573 (2d Cir. 1986); *see, e.g., Anderson v. Simon*, 217 F.3d 472, 475-76 (7th Cir. 2000) (holding that it was a prosecutorial decision for prosecutor to refuse to charge arrestee while waiting for further evidence); *Long v. Satz*, 181 F.3d 1275, 1278-80 (11th Cir. 1999) (determining that prosecutor who failed to turn over exculpatory evidence, prolonging incarceration of wrongfully convicted plaintiff, was performing prosecutorial function); *Guzman-Rivera*, 55 F.3d at 31 ("Even if it were shown that [prosecutors] reviewed evidence, found Guzman innocent, and did nothing, their decision withal not to dismiss his criminal case lies at the heart of prosecutorial function.").

[15] Dempsey plays games with the filing dates in his response to Elmore's motion, stating that the probable cause determination was not made until August 2, 2006. Doc. 144 at 2. The municipal judge, however, signed his arrest warrants on July 12, 2006, as discussed *supra*.

*Kalina*, 522 U.S. at 129-131, where the prosecutor acted as a witness in certifying (swearing to) the facts that formed the basis of the court's *probable cause* finding. It is well settled that a prosecutor's participation in setting bond or bail is a component of the initiation and presentation of a prosecution and is protected by absolute immunity. *Root v. Liston*, 363 F. Supp. 2d 190, 194 (D. Conn. 2005) (a prosecutor's participation in setting bond or bail is a component of the initiation and presentation of a prosecution and is protected by absolute immunity) (citing *Pinaud v. County of Suffolk*, 52 F.3d 1139, 1149 (2d Cir. 1995)). And even if Elmore lied to the judge in an effort to persuade him to deny bail and keep Dempsey in jail, such misrepresentations do not defeat her assertion of immunity. *Cf. Burns v. Reed*, 500 U.S. 478, 485 (1991) (prosecutorial immunity even "extend[s] to the knowing use of false testimony before the grand jury"). Accordingly, this claim is meritless.

## III.  CONCLUSION

Defendants' summary judgment motions (docs. 134, 136, 140) are **GRANTED**. Dempsey's complaint against Chris Nollinger is **DISMISSED WITHOUT PREJUDICE** under Fed. R. Civ. P. 4(m). Dempsey's motion

for summary judgment (doc. 148),which in reality is just an informational filing, is **DENIED**, as is his (frivolous) motion for sanctions, (doc. 155), to amend (doc. 168), and for default judgment. Doc. 176. Since no claims survive summary judgment, this case is **DISMISSED**.[16]

**SO ORDERED** this 23ʳᵈ day of March, 2010.

WILLIAM T. MOORE, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

---

[16] In addition, Dempsey's motion for an extension of time, doc. 165, is **DENIED** as moot.